IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHIRLEY BOHANNON-HINGSTON,

               Plaintiff,                              No. CIV S-11-0776  KJM-EFB

      vs.

THE BRACHFELD LAW GROUP, A
PROFESSIONAL CORPORATION,

               Defendant.                     <u>ORDER</u>

                                                   /

        This matter comes before the court on the motion for summary judgment filed by defendant, The Brachfield Law Group ("defendant"), attacking the claims of  plaintiff Shirley Bohannon-Hingston brought under the Fair Debt Collection Practices Act ("FDCPA"), the Rosenthal Fair Debt Collection Practices Act ("RFDCPA") and for the torts of invasion of privacy and intentional infliction of emotional distress.  (ECF 29.)  Plaintiff opposes the motion. (ECF 30.)  For the  reasons set forth below, defendant's motion for  summary judgment is hereby DENIED.

I.      PROCEDURAL HISTORY AND UNDISPUTED FACTS[1]

        Plaintiff filed her complaint on March 3, 2011, alleging that defendant violated the FDCPA and RFDCPA. (ECF 1. )  Plaintiff's complaint also contains corollary state law

---

[1]  The facts set forth herein are undisputed in light of plaintiff's filing a "statement of agreement with defendant's statement of undisputed facts."  (ECF 31.)

1   claims for "violation of right to privacy" and intentional infliction of emotional distress.  (*Id.*)

2   On August 12, 2011, defendant filed a motion for summary judgment.  (ECF 20.)  Defendant did

3   not file a separate statement of undisputed facts, as required by  Local Rule 260(a).  (*Id.*)  The

4   court denied defendant's motion for summary judgment and granted leave to re-file the motion

5   in compliance with the local rules.  (*See* Order, filed Oct. 18, 2011, ECF No. 28.)[2]  Defendant

6   filed the present motion for summary judgment on October 10, 2011.  (ECF 29.)  Plaintiff filed

7   her opposition on November 14, 2011.  (ECF 30. )   Defendant filed its reply on November 28,

8   2011.  (ECF 34.)

9           Plaintiff became indebted to Household Bank in 2006.  (Def.'s Statement of

10   Undisputed Fact, filed Oct. 19, 2011, ECF No. 30-3 ¶ 1.)  When Plaintiff did not comply with

11   the terms of the loan, defendant began efforts to collect the debt.  (*Id.* ¶ 2.)

12           Plaintiff testified through her declaration that, beginning in January 2011,

13   defendant's employee began calling her at her place of employment, the Sport Chalet in

14   Roseville, California.  (Decl. of Shirley Bohannon-Hingston ("Bohannon Decl."), filed March

15   22, 2011, ECF  1-2, ¶¶ 3-4.)  Defendant admits that it called plaintiff at least two times a day

16   both at home and at work in an effort to collect the debt.  (Def.'s Statement of Undisputed Fact

17   ¶ 3.)  During the first conversation plaintiff had with defendant's employee, she informed the

18   employee she was not allowed to take calls at work and immediately terminated the

19   conversation; the employee called back directly and asked to speak with her manager.

20   (Bohannon Decl. ¶ 5.)  According to plaintiff, during the entire month of February 2011, and into

21   early March, the employee continued to call her at work.  (*Id.* ¶ 6.)  On one occasion, the

22

23           [2]  The court noted other procedural irregularities with defendant's first motion for
    summary judgment.  For example, "both parties fail[ed] to cite to any underlying evidence as the
24   basis for their respective positions on the motion" and consistently referred to the sufficiency of
    the allegations in plaintiff's complaint.  (Order, filed Oct. 18, 2011, ECF 28 at 2:3-5.)  In filing
25   the pending motion, defendant has corrected its previous procedural error by filing a separate
    statement of undisputed fact.  However, defendant still has not submitted any admissible
26   evidence; instead, defendant merely cites to plaintiff's complaint as the basis for its motion.

1   employee asked a manager at plaintiff's workplace for her work schedule; on another, the

2   employee left a message with plaintiff's manager stating that he was an attorney.  (*Id.* ¶¶ 7-8.)

3            Plaintiff describes the employee's conduct as "rude," persistent and "aggressive."

4   (*Id.* ¶ 9.)  Plaintiff, in her declaration, states that because of the sheer volume of calls she

5   received at work, she had to explain to her manager that she was in the midst of financial

6   difficulties and the calls were from a collection agency.  (*Id.* ¶ 10.)  According to plaintiff, she

7   revealed this to her boss out of fear that she would lose her job because of the number of calls

8   she was receiving at work.  (*Id.*)  Plaintiff also had to ask her co-workers, when she received a

9   call, to lie and tell the caller that she was not available.  (*Id.* ¶ 12.)  Plaintiff states that

10  defendant's collection tactic of continually calling her at work, thereby forcing her to reveal to

11  her manager that she was in debt and to her co-workers that she could no longer take calls,

12  caused her extreme embarrassment, stress and humiliation and burdened her marriage.  (*Id.* ¶¶

13  10-14.)

14           On July 19, 2011, defendant represented Midland Funding, LLC in a collection

15  lawsuit filed against plaintiff.  The state court collection case was based on an alleged contract

16  between plaintiff and Midland Funding LLC, Household Bank's successor-in-interest, for failure

17  to make payments on the debt as agreed.  Midland Funding, LLC secured a default judgment

18  against plaintiff in Placer County Superior Court.  (Declaration of Jonathan Birdt, filed Oct. 19,

19  2011, ECF No. 29-3.)  Defendant now contends that the state court judgment bars each of

20  plaintiff's claims under both the Rooker-Feldman doctrine and *res judicata*.  Moreover,

21  defendant asserts that the allegations surrounding defendant's debt collection practices are

22  insufficient to amount to a violation of either the FDCPA or the RFDCPA, or to constitute state

23  torts of intrusion of privacy or intentional infliction of emotional distress.  Thus, defendant

24  maintains that the court should grant its motion for summary judgment in its entirety.

25  /////

26  /////

3

1    III.    SUMMARY JUDGMENT STANDARD

2            A court will grant summary judgment "if . . . there is no genuine dispute as to any

3    material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

4    The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

5    resolved only by a finder of fact because they may reasonably be resolved in favor of either

6    party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[3]

7            The moving party bears the initial burden of showing the district court "that there

8    is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477

9    U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish that

10   there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

11   475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular parts

12   of materials in the record . . .; or show [] that the materials cited do not establish the absence or

13   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

14   support the fact." FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

15   nonmoving party] must do more than simply show that there is some metaphysical doubt as to

16   the material facts").  Moreover, "the requirement is that there be no *genuine* issue of *material*

17   fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing

18   law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48

19   (emphasis in original).

20           In deciding a motion for summary judgment, the court draws all inferences and

21   views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at

22   587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).   "Where the record taken as a

23   whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

24   ─────────────────

25           [3] Rule 56 was amended, effective December 1, 2010.  However,  it is appropriate to rely
     on cases decided before the amendment took effect, as "[t]he standard for granting summary
     judgment remains unchanged." FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010

26   amendments.

1   issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities*

2   *Service Co.*, 391 U.S. 253, 289 (1968)).

3   III.    ANALYSIS

4           Defendant contends the court should grant its motion for summary judgment

5   because the underlying state court action precludes this federal action under both the Rooker-

6   Feldman doctrine and *res judicata*.  Defendant also maintains plaintiff has failed to satisfy her

7   burden of producing sufficient evidence to demonstrate there is a disputed question of material

8   fact that would preclude summary judgment on plaintiff's claims that defendant violated the

9   FDCPA and the RFDCPA, or committed state torts of intrusion of privacy or intentional

10  infliction of emotional distress under California law.

11          A.      The Rooker-Feldman Doctrine

12          Defendant contends this action is barred because defendant previously obtained a

13  state-court judgment against plaintiff that precludes plaintiff from litigating her claims in this

14  court.  Plaintiff counters that the Rooker-Feldman doctrine is inapplicable to her claims under

15  the FDCPA because the relief sought by the defendant's successor in the state court action is

16  mutually exclusive of the relief plaintiff seeks in this action.

17          The Rooker-Feldman doctrine bars claims in federal court by "state-court losers

18  complaining of injuries caused by state-court judgments rendered before the district court

19  proceedings commenced and inviting district court review and rejections of those judgments."

20  *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).  A federal

21  district court does not have subject matter jurisdiction to hear a direct appeal from the final

22  judgment of a state court.  *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923); *Dist. of*

23  *Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).   If federal claims are

24  "inextricably intertwined" with a state court judgment, the federal court may not hear them.

25  *Feldman*, 460 U.S at 483-84.  "[T]he federal claim is 'inextricably intertwined' with the state

26  court judgment if the federal claim succeeds only to the extent that the state court wrongly

5

1  decided the issues before it." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (citation

2  omitted).  In analyzing the applicability of the Rooker-Feldman doctrine, the court "pay[s] close

3  attention to the relief sought by the federal court plaintiff," as the doctrine precludes the

4  adjudication of a federal claim that seeks to undo a prior state court judgment. *Bianchi v.*

5  *Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (citation omitted).

6          In *Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003), the Ninth Circuit summarized the

7  test under Rooker-Feldman as follows:

8          If a federal plaintiff asserts as a legal wrong an allegedly erroneous
        decision by a state court, and seeks relief from a state court

9          judgment based on that decision, Rooker-Feldman bars subject
        matter jurisdiction in federal district court.  If, on the other hand, a

10          federal plaintiff asserts as a legal wrong, an allegedly illegal act or
        omission by an adverse party, Rooker-Feldman does not bar

11          jurisdiction.

12  *Id.* at 1164.  Ultimately then, the Rooker-Feldman doctrine applies "only when the federal

13  plaintiff both asserts as [his] injury legal error or errors by the *state court* and seeks as [his]

14  remedy relief from the *state court judgment*." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140

15  (9th Cir. 2004) (emphases added).

16          In this case, the federal and state-court judgment are not "inextricably

17  intertwined" because plaintiff is not seeking to undo the prior state court judgment.  Plaintiff

18  does not question the validity of the state court judgment, that plaintiff owes the debt that is the

19  subject of the default judgment.  The Rooker-Feldman doctrine thus is inapplicable here because

20  this action bears no relation to the state-court judgment or the conduct underlying that judgment.

21  Rather, this action is based on plaintiff's allegations that defendant, in attempting to collect the

22  debt owed, violated the FDCPA and the RFDCP.  The Rooker-Feldman doctrine is no bar to

23  plaintiff's claims for violation of the FDCPA.

24          B.    *Res Judicata*

25          Defendant also claims, in a cursory argument, this action is barred by the doctrine

26  of *res judicata* because the underlying state court judgment establishing that plaintiff owes

1    Midland Funding, LLC a certain sum constituted a full and final judgment on the merits of

2    plaintiff's FDCPA, RFDCPA and corollary state law claims.  Specifically, defendant contends

3    that *res judicata* precludes plaintiff from litigating this action  because the "subsequent litigation

4    [was] commenced by and between identical parties to prior litigation involving similar issues

5    that has proceeded to a final judgment on the merits."  (Def.'s Opp'n, filed Nov. 14, 2011, ECF

6    30 at 5:9-12.)  Plaintiff argues *res judicata* does not bar this action because plaintiff's FDCPA

7    claims do not arise out of the same transactional nucleus of facts as the underlying state court

8    collection case.

9            Claim preclusion, or *res judicata*, is applicable when there is "(1) an identity of

10   claims, (2) a final judgment on the merits, and (3) privity between parties."  *United States v.*

11   *Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011).  The first prong of

12   the test is satisfied, not by the pleading of identical causes of action, but by demonstrating the

13   suits are part of the "same transaction or series" of events and "whether they could conveniently

14   be tried together."  *Adams*, 487 F.3d at 689.  However, the analysis is fluid, and to determine the

15   identity of claims, the Ninth Circuit employs a four-part test: (1) whether "rights or interests

16   established in the prior judgment would be destroyed or impaired" by the second action moving

17   forward; (2) whether "substantially the same evidence" is presented in both actions; (3) whether

18   the suits "involve infringement of the same right;" and (4) whether the suits arise from the same

19   set of facts.  *Id.*; *see also Liquidators*, 630 F.3d at 1150.  The "most significant factor is that the

20   causes of action arise from a common transactional nucleus of facts."  *Adams*, 487 F.3d at 691.

21           *Res judicata* is inapplicable in this instance because there is no identity of claims

22   between this action and the underlying state-court case resulting in judgment in favor of Midland

23   Funding, LLC.  As noted, plaintiff's claims in the current action arise out of defendant's

24   allegedly improper  attempts to collect the debt plaintiffs owe; the underlying state action merely

25   established that plaintiff owed the debt under the contract.  Moreover, *res judicata* is

26   inapplicable here because there is no privity between the parties:  defendant was not a party to

1   the underlying state court collection judgment, but merely represented Midland Funding, LLC in

2   the underlying default judgment.  Because the state court collection judgment and this action did

3   not arise from a common transactional nucleus of fact, and because there is no privity between

4   the parties, claim preclusion does not bar this action.

5          C.      Litigation Privilege

6                  Defendant's third theory in support of its motion for summary judgment also

7   relates to the underlying state court judgment.  Defendant maintains that California's litigation

8   privilege serves as an independent and complete bar to this action.  The gravamen of defendant's

9   argument is that, because all of the statements made during the course of the state court judicial

10  proceeding are privileged, "any action undertaken in the prosecution of the state court action of

11  which [p]laintiff's counsel was previously unaware would be subject to an evidentiary privilege

12  and not admissible to prove liability."  (Def.'s Mot. for Summ. J., filed Oct. 19, 2011, ECF 29,

13  at 7:3-7.)  Plaintiff counters that the litigation privilege does not bar the admissibility of the

14  allegedly improper calls defendant made to collect the debt because the calls were not in

15  furtherance of the litigation and because "[d]efendant has done nothing but act in its capacity as

16  a debt collector throughout its collection attempts and communications with [p]laintiff."  (Pl.'s

17  Opp'n  at 13:15-18.)

18                 Defendant's contention that the litigation privilege is a bar to this FDCPA action

19  is unavailing.  Section 47(b) of the California Civil Code provides that "[a] privileged

20  publication or broadcast is one made: In any (1) legislative proceeding, (2) judicial proceeding,

21  (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any

22  other proceeding authorized by law."  The litigation privilege does not bar the admissibility of

23  the collection calls plaintiff alleges violated the FDCPA because those calls were not made in the

24  course of any official proceeding.  Plaintiff correctly characterizes them as calls made in an

25  attempt to collect a debt.  Defendant's motion for summary judgment on this ground is

26  unjustified.

D.    FDCPA & RFDCPA

Defendant also contends that the court should grant summary judgment as to plaintiff's claims under the RFDCPA because that statute does not apply to attorneys.   Because defendant operates as a law firm *and* a debt collector, it is not shielded from liability for any violation of the RFDCPA.   *See Abels v. JBC Legal Group*, 227 F.R.D. 541, 548 (N.D. Cal 2005) (holding that the RFDCPA applied to defendant because it was a law firm that "in the ordinary course of business, regularly, on behalf of itself or others, engage[d] in debt collection using form letters sent through the United States Postal Service.").

Defendant further contends that, even if the above-described theories do not warrant summary judgment, plaintiff has not satisfied her burden of coming forward with evidence establishing there is a genuine dispute of material fact regarding whether or not defendant violated the FDCPA and RFDCPA.   Specifically, defendant maintains plaintiff has failed to establish that defendant made the calls with the intent to annoy or harass plaintiff. Plaintiff counters that her sworn declaration, filed concurrently with her complaint, is sufficient to establish a triable issue of fact.

Plaintiff has brought claims under 15 U.S.C. §§ 1692c(a)(3), 1692d and 1692(f), and California Civil Code § 1788.17.  Section 1692c(a)(3) of the FDCPA provides that,

> [w]ithout prior consent of the consumer given directly to the debt collector[4] . . . a debt collector may not communicate with a consumer[5] in connection with the collection of any debt at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

15 U.S.C. § 1692c(a)(3). Section 1692d prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in

---

[4]  Defendant does not dispute that it is a debt collector for purposes of the Act.

[5]  Defendant does not dispute that plaintiff is a consumer for purposes of the Act.

1  connection with the collection of the debt" by "[c]ausing a telephone to ring or engaging any

2  person in telephone conversation repeatedly or continuously . . . ." 15 U.S.C. § 1692d(2).

3  Section 1692f generally prohibits the use of "unfair or unconscionable means to collect or

4  attempt to collect a debt." 15 U.S.C. § 1692f. Finally, California Civil Code § 2788.17 provides

5  that any violation of the FDCPA is also a violation of the RFDCPA.

6          Defendants' contention that plaintiff has failed to meet her evidentiary burden is

7  undercut by plaintiff's sworn declaration. Instead, it is defendant in this instance that has failed

8  to satisfy its burden in that it has proffered no evidence to contest plaintiff's averments from

9  which a jury could conclude defendant violated the statutes on which plaintiff bases her claims.

10         Plaintiff's declaration expressly provides that defendant's employee continued to

11  call her at work after she informed him she was not allowed to take calls at work. Plaintiff thus

12  satisfies her burden of coming forward with admissible evidence supporting her claim under

13  section 1692c(a)(3) of the FDCPA. Plaintiff's declaration also establishes at this stage of the

14  litigation that defendant's employee called persistently after plaintiff asked him to stop,

15  sometimes multiple times during the day; that he was rude and aggressive, and asked to speak to

16  plaintiff's manager at her place of employment; and then that he told the manager he was an

17  attorney. Plaintiff thus has proffered evidence demonstrating a dispute as to whether defendant

18  violated Sections 1692d and 1692(f) of the FDCPA. In the face of plaintiff's declaration,

19  defendant has failed to, "cit[e] to particular parts of materials in the record . . .; or show [] that

20  the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV.

21  P. 56(c)(1).

22         At this point in the litigation, the court must draw all inferences and view all

23  evidence in the light most favorable to plaintiff. On the record before the court, defendant's

24  motion for summary judgment as to plaintiff's claims under the FDCPA and the RFDCPA must

25  be DENIED.

26  /////

10

E.      Invasion of Privacy/Intentional Infliction of Emotional Distress

Finally, defendant maintains the court should grant summary judgment of plaintiff's claims for invasion of privacy and intentional infliction of emotional distress because plaintiff has failed to produce evidence that the content of the calls was sufficiently offensive or intrusive to state a viable claim for either tort.  Contrary to defendant's contention, plaintiff's sworn declaration offers evidence from which a reasonable factfinder could conclude defendant engaged in abusive debt collection practices, including divulging personal information to the manager at plaintiff's place of employment.  Here as well, defendant has not proffered any evidence from which the court can conclude as a matter of law that its debt collection practices were not sufficiently abusive or offensive to constitute a claim for invasion of privacy or intentional infliction of emotional distress.  Defendant's motion for summary judgment as to plaintiff's third and fourth claims for invasion of privacy and intentional infliction of emotional distress must also be DENIED.

IV.     CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is DENIED in its entirety.

IT IS SO ORDERED.

DATED:  December 13, 2011.

UNITED STATES DISTRICT JUDGE